SUSAN MARTIN (*Pro Hac Vice*)
  smartin@martinbonnett.com
JENNIFER KROLL (*Pro Hac Vice*)
  jkroll@martinbonnett.com
MARTIN & BONNETT, PLLC
4647 N. 32nd St., Suite 185
Phoenix, AZ 85018
Telephone: (602) 240-6900
Facsimile: (602) 240-2345

PETER K. STRIS (SBN 216226)
  peter.stris@strismaher.com
VICTOR O'CONNELL (SBN 288094)
  victor.oconnell@strismaher.com
STRIS & MAHER LLP
725 South Figueroa Street, Suite 1830
Los Angeles, CA 90017
Telephone: (213) 995-6800
Facsimile: (213) 261-0299

*Attorneys for Plaintiff*

BRIAN T. ORTELERE (*Pro Hac Vice*)
  bortelere@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone: (215) 963.5000
Facsimile: (215) 963.5001

JOSEPH V. MARRA III (SBN 238181)
  joseph.marra@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071-3132
Telephone: (213) 612-2500
Facsimile: (213) 612-2501

MATTHEW A. RUSSELL (*Pro Hac Vice*)
  matthew.russell@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive, Fifth Floor
Chicago, IL 60601-5094
Telephone: (312) 324.1000
Facsimile: (312) 324-1001

STEPHANIE R. REISS (*Pro Hac Vice*)
  stephanie.reiss@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
One Oxford Centre, Thirty-Second FL.
Pittsburgh, PA 15219-6401
Telephone: (412) 560-3378
Facsimile: (412) 560-7001

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

CURTIS TOM,

Plaintiff,

v.

COM DEV USA, LLC, *et al.*,

Defendants.

Case No. 2:16-cv-01363 PSG (GJSx)

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR CLASS ACTION CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Hearing Date: September 18 , 2017
Time: 1:30 p.m.
Judge: Hon. Philip S. Gutierrez
Courtroom: 6A
First Amended Complaint Filed: September 16, 2016

DB1/ 92833830.4

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

I.      BACKGROUND AND NEGOTIATIONS.................................................. 1

II.     THE SETTLEMENT CLASS AND THE TERMS OF THE  SETTLEMENT ............................................................................................ 5

III.    RATIONALE FOR SETTLEMENT................................................... 9

IV.     CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED  10

        A.      The Settlement Class Meets the Requirements of Rule 23(a) ............10

                1.      The Requirement of Rule 23(a)(1) that Joinder is Impracticable is Met.................................................................................10

                2.      The Commonality Requirement under Rule 23(a)(2) Is Met ...12

                3.      The Typicality Requirement under Rule 23(a)(3) Is Met.........14

                4.      Named Plaintiff is an Adequate Class Representative under Rule 23(a)(4)...............................................................................15

        B.      Class Counsel Has Adequately Represented the Interests of the  Class ..........................................................................................15

        C.      The Settlement Class Meets the Requirements of Rule 23(b)(1) .......16

V.      THE SETTLEMENT MEETS THE STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(e) ............................................................. 1

        A.      The Amount Offered in Settlement Is Substantial and Favors Settlement..................................................................................21

        B.      The Strength of Named Plaintiffs' Case and the Significant Risk, Expense, Complexity and Likely Duration of Further Litigation All Favor the Settlement...............................................................23

        C.      The Risk of Maintaining Class Action Status Favors the Settlement. 24

        D.      Class Counsel  has Performed Sufficient Discovery, and the Proceedings are Sufficiently Advanced, to Reach an Informed Settlement Decision...................................................................25

        E.      The Settlement Was Negotiated by Highly Experienced Class Counsel Who View it as Fair, Reasonable and Adequate................................25

        F.      The Settlement Was Reached After Extensive and Adversarial Negotiations, and Is Not a Product of Collusion. ..............................26

VI.   THE FORM OF CLASS NOTICE SATISFIES THE REQUIREMENTS OF RULE 23 ................................................................................................. 27

CONCLUSION ............................................................................................... 27

# TABLE OF AUTHORITIES

**Cases**

*A.F. ex rel. Legaard v. Providence Health Plan*,
   87 Fed. R. Serv. 3d 417, 2013 WL 6796095 (D. Or. 2013) ........................................ 16

*Abdullah v. U.S. Sec. Associates, Inc.*,
   731 F.3d 952 (9th Cir. 2013) ................................................................................... 12

*Adoma v. Univ. of Phoenix*,
   913 F.Supp.2d 964 (E.D. Cal 2012) ......................................................................... 22

*Alba v. Papa John's USA, Inc.*,
   No. CV 05-7487, 2007 WL 953849 (C. D. Ca. Feb. 7, 2007)..................................... 11

*Arnold v. Arizona Dep't. of Pub. Safety*,
   CV-01-1463-PHX-LOA, 2006 WL 2168637 (D. Ariz. July 31, 2006) ..................... 19

*Barbosa v. Cargill Meat Solutions, Corp.*,
   297 F.R.D. 431 (E.D. Cal. 2013)............................................................................... 22

*Barnes v. AT & T Pension Ben. Plan-NonBargained Program*,
   273 F.R.D. 562 (N.D. Cal. 2011)............................................................................... 14

*Berger v. Xerox Corp. Ret. Income Guarantee Plan*,
   338 F.3d 755 (7th Cir. 2003) .................................................................................... 14

*Boyd v. Bechtel Corp.*,
   485 F. Supp. 610 (N.D. Cal. 1979) ........................................................................... 26

*Brink v. First Credit Resources*,
   185 F.R.D. 567 (D. Ariz. 1999) ................................................................................ 14

*Bryant v. Ariz. Pipe Trades Pension Trust Fund*,
   No. CV-13-01563-PHX-GMS, 2015 WL 300385 (D. Ariz. Jan. 22, 2015) ........ 12, 13

*Bublitz v. E.I. Du Pont de Nemours and Co.*,
   202 F.R.D. 251 (S.D. Iowa 2001).............................................................................. 10

*Carson v. Am. Brands, Inc.*,
   450 U.S. 79 (1981)..................................................................................................... 20

*Catala v. Resurgent Capital Services L.P.*,
   Civil No. 08cv2401 NLS, 2010 WL 2524158 (S.D.Cal. June 22, 2010)................... 25

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1993) .................................................................................. 19

*DiFelice v. U.S. Airways, Inc.*,
   235 F.R.D. 70 (E.D. Va. 2006).................................................................................. 14

*Draney v. Wilson, Morton, Assaf & McElligott*,
   Civ. 79-1029, 1985 WL 5820 (D. Ariz. Sept. 30, 1985) ........................................... 21

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ................................................................ 15

*Escalante v. California Physicians' Service*,
  309 F.R.D. 612 (C.D. Cal. 2015) ..................................................... 10, 13

*Evans v. Jeff D.*,
  475 U.S. 717 (1986) .............................................................................. 20

*Facciola v. Greenberg Traurig LLP*,
  CV-10-1025-PHX-FJM, 2012 WL 1021071 (D. Ariz. Mar. 20, 2012) ............... 15

*Gaspar v. Linvatec Corp.*,
  167 F.R.D. 51 (N.D.Ill. 1996) ............................................................... 11

*Gen. Tele. Co. v. Falcon*,
  457 U.S. 147 (1982) .............................................................................. 14

*George v. Duke Energy Ret. Cash Balance Plan*,
  259 F.R.D. 225 (D.S.C. 2009) ............................................................... 14

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ...................................................15, 19, 20, 21

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir.1992) .................................................................. 14

*Harris v. Koenig*,
  271 F.R.D. 383 (D.D.C. 2010) ............................................................... 17

*Horn v. Associated Wholesale Grocers, Inc.*,
  555 F.2d 270 (10th Cir. 1977) ............................................................... 10

*Horton v. USAA Cas. Ins. Co.*,
  266 F.R.D. 360 (D. Ariz. 2009) ............................................................. 20

*Humphrey v. United Way*,
  No. H-05-0758, 2007 WL 2330933 (S.D. Tex. August 14, 2007) ............... 17, 18

*In re Activision Sec. Litig.*,
  723 F.Supp. 1373 (N.D. Cal. 1989) ......................................................... 22

*In re Beer Distrib. Antitrust Litig.*,
  188 F.R.D. 557 (N.D. Cal. 1999) ............................................................ 11

*In re Cement and Concrete Antitrust Lit.*,
  817 F.2d 1435 (9th Cir. 1987) ............................................................... 27

*In re Citigroup Pension Plan ERISA Litig.*,
  241 F.R.D. 172 (S.D.N.Y. 2006) ........................................................ 17, 18

*In re Ikon Office Solutions, Inc.*,
  191 F.R.D. 457 (E.D. Pa. 2000) ............................................................. 14

*In re Jiffy Lube Sec. Litig.*,
  927 F.2d 155 (4th Cir. 1991) ................................................................. 19

*In re McKesson HBOC, Inc. ERISA Lit.*,
   391 F.Supp.2d 844 (N.D.Ca. 2005) ........................................................... 19

*In re Schering Plough Corp. ERISA Litig.*,
   589 F.3d 585 (3d Cir. 2009) ...................................................................... 14

*In re Syncor ERISA Litigation*,
   516 F.3d 1095 (9th Cir. 2008) ................................................................... 19

*In re Toys R Us-Delaware, Inc.*,
   295 F.R.D. ............................................................................................ 21, 26

*In re Wash. Pub. Power Supply Sys. Sec. Lit.*,
   720 F. Supp. 1379 (D. Ariz. 1989) ........................................................... 26

*Jackson v. Danberg*,
   240 F.R.D. 145 (D. Del. 2007) ................................................................. 10

*Knight v. Red Door Salons, Inc.*,
   2009 WL 248367 (N.D. Cal 2009) ........................................................... 22

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ................................................................... 25

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
   244 F.3d 1152 (9th Cir. 2001) ................................................................... 16

*Mazza v. Am. Honda Motor Co., Inc.*,
   666 F.3d 581 (9th Cir. 2012) ..................................................................... 12

*McCluskey v. Trustees of Red Dot Corp. Employee Stock Ownership Plan & Trust*,
   268 F.R.D. 670 (W.D. Wash. 2010) .......................................................... 11

*McKenzie v. Federal Exp. Corp.*,
   No. CV 10–02420 GAF (PLAx), 2012 WL 2930201 (C.D.Cal. July 2, 2012) ........... 25

*Mego Financial Corp. Securities Lit. v. Nadler*,
   213 F.3d 454 (9th Cir. 2000) ......................................................... 20, 21, 23

*Molski v. Gleich*,
   318 F.3d 937 (9th Cir. 2003) ..................................................................... 21

*Monarch Asphalt Sales Co., Inc. v Wilshire Oil Co. of Texas*,
   511 F.2d 1073 (10th Cir. 1975) ................................................................. 11

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) .................................................................................. 27

*Nat'l Rural Telecom. Coop. v. DirecTV, Inc.*,
   221 F.R.D. 523 (C.D.Cal. 2004) ............................................................... 24

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ................................................... 19, 20, 21, 26

*Parsons v. Ryan*,
   754 F.3d 657 (9th Cir. 2014) ..................................................................... 13

*Pender v. Bank of Am. Corp.*,
  269 F.R.D. 589 (W.D.N.C. 2010) .................................................................. 14

*Phipps v. Sheriff of Cook County,*
  249 F.R.D. 298 (N.D.Ill. 20008) ................................................................. 11

*Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*,
  No. 14-CV-05596-JST, 2015 WL 5569462 (N.D. Cal. Sept. 22, 2015) ................... 13

*Rhode Island Public Employees Retiree Coalition v. Raimondo*,
  No. PC 2015-1468, 2015 WL 1872189 (R.I. Super. Apr. 16, 2015) ......................... 13

*Richards v. FleetBoston Fin. Corp.*,
  238 F.R.D. 345 (D. Conn. 2006) .......................................................... 14, 17, 18

*Savani v. Washington Safety Mgmt. Solutions, LLC*, 1:06-CV-02805-MBS,
  2012 WL 3757239 (D.S.C. Aug. 28, 2012) .................................................. 18

*Schutte v. Maleski*,
  No. Civ. A. 93-0961, 1993 WL 218898 (E.D. Pa. June 18, 1993) ................... 17, 18

*Singer v. Becton Dickinson and Co.*,
  2010 WL 2196104 (S.D. Cal. Jun. 1, 2010) ................................................. 22

*Smith v. Krispy Kreme Doughnut Corp.*,
  2007 WL 119157 (M.D N.C. Jan. 10, 2007) ............................................... 22

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) .......................................................... 20, 21

*Stockwell v. City & Cnty. of San Francisco*,
  749 F.3d 1107 (9th Cir. 2014) ................................................................ 12

*Sullivan v. DB Investments, Inc.*,
  667 F.3d 273 (3d Cir. 2011) ................................................................... 12

*Tennessee Ass'n of Health Maint. Org., Inc. v. Grier*,
  262 F.3d 559 (6th Cir. 2001) ................................................................. 19

*Thomas v. SmithKline Beecham Corp.*,
  201 F.R.D. 386 (E.D. Pa. 2001) ......................................................... 17, 18

*Tietz v. Bowen*,
  695 F.Supp. 441 (N.D. Cal. 1987) ......................................................... 11

*Torrisi v. Tuscon Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ............................................................... 21, 27

*Vaquero v. Ashley Furniture Indus., Inc.*,
  824 F.3d 1150 (9th Cir. 2016) .............................................................. 12

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ............................................................................. 12

*Weiss v. New York Hospital*,
  745 F.2d 786 (3d Cir. 1984) ................................................................. 10

*Will v. General Dynamics Corp.*,
   2010 WL 4818174 (S.D. Ill. Nov. 22, 2010) ............................................................22

*Winkler v. DTE, Inc.*,
   205 F.R.D. 235 (D. Ariz. 2001) ...........................................................................11, 14

**Rules**

Fed R. Civ. P. 23 ................................................................................................*passim*

**Other Authorities**

1 *Newberg on Class Actions* § 3:5 ...................................................................................10

Manual for Complex Litigation (Fourth), §21.632 - §21.634, at 320-22
   (4th ed. 2004) .......................................................................................................18

**INTRODUCTION**

The parties hereby jointly move for certification of a settlement class under Fed R. Civ. P. 23(b)(1), for preliminary approval of a class action settlement pursuant to Fed. R. Civ. P. 23(e) and for approval of the form of notice to be sent to Settlement Class members.[1] Exhibit 1 hereto is the parties' class action Settlement Agreement. Exhibit E to Exhibit 1 is the Preliminary Approval Order proposed by the parties certifying the Settlement Class and directing notice to the Settlement Class members.

The Settlement Agreement eliminates completely the risk that the Settlement Class members will not recover in the litigation and provides for a Gross Settlement Amount of $4,085,000 for the Settlement Class members, all of whom are retired.  In addition, certification of the Settlement Class eliminates the possibility that any individual member of the Settlement Class would not be able to share in the settlement proceeds.  This case was vigorously litigated.  As discussed below, the Settlement is fair, reasonable and an excellent result for the Settlement Class members.

**I.      BACKGROUND AND NEGOTIATIONS**

After filing an administrative claim and appeal with Defendant Plan Administrator of the COM DEV USA, LLC Retirement Plan ("Plan"), Plaintiff Curtis Tom commenced this putative class action on February 26, 2016.[2] The amended complaint alleges that Defendants violated the Employee Retirement Income Security Act ("ERISA") and the terms of the Plan and applicable successor plans by, *inter alia*, improperly calculating, estimating, and paying the 5-year, 10-year, and 15-year "certain benefit" optional forms of benefits under the Plan ( herein "Period Certain Benefit Options" and by failing to disclose plan changes and amendments affecting those benefit options.

Specifically, among other things, the amended complaint alleges that the

---

[1] Capitalized terms are as set forth in the Agreement.
[2] An amended complaint was filed on September 16, 2016.

actuarial equivalent of Period Certain Benefit Options were improperly calculated and estimated based on certain segment interest rates, rather than the 30-year Treasury rate, as the applicable interest rate, and by failing to include both the actuarial value of Cost of Living Adjustments ("COLA") reasonably estimated to be payable under a life annuity during the lifetime of the participant along with the value of the participant's subsidized early retirement benefit, for participants who were eligible to receive subsidized early retirement benefits and COLA payments on life annuities.

Plaintiff brought the claims on behalf of himself and the putative Settlement Class members, seeking retroactive and prospective benefits under ERISA § 502(a)(1)(B) and injunctive, declaratory and other equitable relief under ERISA § 502(a)(3). The putative Settlement Class consists of retirees covered by Parts Two or Three of the Plan who retired and commenced receipt of benefits and who were paid a Period Certain Benefit Option calculated using segment rates, rather than the 30-year Treasury rate, as the applicable interest rate; and/or who were paid a Period Certain Benefit Option that failed to include both the actuarial value of COLA reasonably estimated to be payable under a life annuity during the lifetime of each Plan participant and the value of the participant's subsidized early retirement benefit (where applicable). The putative Settlement Class also includes retirees who elected forms of monthly life annuities and did not elect Period Certain Benefit Options but who, like Plaintiff, were provided with comparative "relative value" benefit calculations for the Period Certain Benefit Options that failed to represent the values for the Period Certain Benefit Options that Named Plaintiff contends should have been disclosed using the 30-year Treasury rate as the applicable interest rate, and/or for a participant eligible for subsidized early retirement, failed to include the both the actuarial value of COLA reasonably estimated to be payable under a life annuity during the lifetime of the participant and the value of the participant's subsidized early retirement benefit.

Count I of the complaint asserts a claim for benefits under ERISA

§502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B).  Count II alleges that Defendants violated ERISA's actuarial equivalence requirements and seeks redress under ERISA § 502(a)(1)(B) and ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). Count III alleges that Defendants reduced accrued benefits and future benefit accruals without notice in violation of ERISA § 204(g), 29 U.S.C. § 1054(g), ERISA's "anti-cutback rule" and ERISA § 204(h), 29 U.S.C. § 1054(h).  Count IV alleges that Defendants violated ERISA's statutory duties of disclosure and written plan requirements contained in ERISA §§ 102, 104(b), 205 and 402, 29 U.S.C. §§ 1022, 1024(b), 1055 and 1102, and regulations thereunder. Count V alleges that Defendants violated their ERISA fiduciary obligations and that Named Plaintiff and putative class members are entitled to equitable remedies.[3]

Soon after Defendants' counsel entered an appearance in this case, Named Plaintiff undertook discovery. Defendants objected to most of the discovery requests. Ultimately, the discovery that the parties agreed Defendants would produce pending resolution of the discovery issues by the Court resulted in the production of more than 5,000 pages of documents by Defendants.  Named Plaintiff also obtained documents and a declaration from the Plan Administrator of L-3 (the predecessor company to Defendant Com Dev USA, LLC, which maintained the plan prior to sale of the division in which the participants within the putative Settlement Class were employed.)

Defendants filed a summary judgment motion addressed to Named Plaintiff's Amended Complaint on October 31, 2016. On December 6, 2016, Named Plaintiff submitted a response, cross motion for summary judgment, and Rule 56(d) motion (in the event Named Plaintiff's motion for summary judgment was not granted).  In

---

[3] Count VI of the original Complaint sought declaratory relief precluding enforcement of an arbitration agreement.  However, the parties stipulated that Defendants would waive enforcement of the arbitration agreement, mooting the count, which was withdrawn.

support of Named Plaintiff's motion, Named Plaintiff retained an actuarial expert witness. Named Plaintiff also challenged some of the documents withheld on the grounds of privilege, and Magistrate Judge Standish issued a ruling ordering Defendants to produce some of the documents sought by Named Plaintiff. Thereafter, Named Plaintiff moved to supplement his summary judgment motion and Rule 56(d) motion based upon the documents Defendants were ordered to produce and after obtaining a declaration from the plan administrator at L-3.

In response to Named Plaintiff's summary judgment motion, Defendants retained their own actuarial expert witness and also moved to strike the expert report submitted in support of Named Plaintiff's motion for summary judgment. At the time the parties reached a settlement, the cross motions for summary judgment, Named Plaintiff's Rule 56(d) motion, Named Plaintiff's Motion to Supplement, and Defendant's Motion to Strike were fully briefed and had been taken under submission by the Court without argument in advance of the hearings previously scheduled for May 15, 2017.   Dkt. 138.

In September 2016, the parties submitted a stipulation regarding, *inter alia*, the scope of discovery and class certification, which was approved by the Court by Order dated October 24, 2016.  In February 2017, however, the Court declined to approve the parties' stipulation on class certification. The parties believe that the Court wanted a thorough legal analysis and briefing under Rule 23 before granting certification, and that is what the parties have done herein with respect to the proposed Settlement Class.

In April 2017, the Parties jointly engaged Michael Dickstein, a prominent mediator with experience mediating complex ERISA and class action disputes. The Parties and their attorneys participated in several, arms-length mediation attempts beginning with an all-day, in-person session on April 18, 2017, and thereafter through various telephonic conferences, including a second full day of mediation by telephone on May 9, 2017. The parties reached a settlement on monetary terms on May 25,

4

2017, and signed a memorandum of understanding reflecting preliminary settlement terms on May 31, 2017.

## II.   THE SETTLEMENT CLASS AND THE TERMS OF THE SETTLEMENT

The Settlement resolves this litigation by providing substantial monetary relief and benefits to the 24 members of the Settlement Class. The Gross Settlement Amount consisting of the Settlement Benefits, Fee Award as determined by the Court, and a Case Contribution Award as determined by the Court for Named Plaintiff's time and services devoted to the class totals $4,085,000. Settlement Class members will receive additional pension benefits based on this Gross Settlement Amount less the amount the Court determines for Class Counsel's attorneys' fees and costs and for a Case Contribution Award to Named Plaintiff.

### <u>Settlement Class</u>

The parties jointly request the Court to certify the following Settlement Class: Participants in Part Two or Part Three of the Plan who retired and commenced receipt of benefits and who are listed on the Plan of Allocation and on Exhibit C to the Settlement Agreement and fall within either Group A or Group B defined below (or their alternate payee listed on Exhibit C) and every derivative claimant of such person who is an Eligible Beneficiary or Eligible Estate Representative as set forth in the Settlement Agreement

Group A includes individuals:
 (1): who were paid a Period Certain Benefit Option that was calculated using segment interest rates, rather than the 30-year treasury rate, as the applicable interest rate, and/or
 (2) who were paid a Period Certain Benefit Option that failed to include both the actuarial value of a COLA reasonably estimated to be payable under a life annuity during the lifetime of the participant and the value of the participant's subsidized early retirement benefit (where the participant was otherwise eligible for a COLA and a subsidized early retirement under the Com Dev Plan)

Group B includes individuals: who elected a form of benefit that was not a Period Certain Benefit Option but were provided with information

describing the various optional forms of benefits and the relative values of each optional benefit form that included a Period Certain Benefit Option that was calculated using segment interest rates, rather than the 30-year treasury rate, as the applicable interest rate, and/or failed to include both the actuarial value of COLA reasonably estimated to be payable under a life annuity during the lifetime of the participant and the value of the participant's subsidized early retirement benefit (where the participant was otherwise eligible for a COLA and a subsidized early retirement  under the Com Dev Plan).Group B also includes every derivative claimant of such person who is an Eligible Beneficiary or Eligible Estate Representative as set forth in the Settlement Agreement.

**Plan of Allocation**

Pursuant to the Settlement Agreement and in consultation with and based on the calculations performed by Named Plaintiff's actuary, Jim Holland, of Cheiron, Inc, in Washington D.C., Class Counsel has formulated a Plan of Allocation attached hereto as Ex. 2. As set forth in detail in the expert report submitted by Named Plaintiff, Dkt. 86,  Mr. Holland has over 35 years of experience in the pension area including 25 years as the chief pension actuary for the Internal Revenue Service. Pursuant to the Plan of allocation, Group A members and Group B members will receive additional pension benefits based on two different methodologies as follows:

**Group A** :  For each Group A Settlement Class member, Named Plaintiff's actuary calculated the difference between the present value of the Period Certain Benefit Option calculated by the Plan and the total past and present value that Settlement Class member would have received if the Period Certain Benefit Option had been calculated as contended by Named Plaintiff, and utilizing a cost of living factor that had been utilized by the Plan of 2.22 ("Potential Losses").  Group A Settlement Class members (or the alternate payee of such persons) will receive additional pension benefits based on a percentage of the Potential Losses less the Fee Award and Case Contribution award determined by the Court.

It is estimated that gross amount of Settlement Benefits payable to Group A Settlement Class members (prior to the fee and case contribution award) is

6

approximately  85.78 % of the  difference between the actuarial present value of the
retirement benefits they will or have received under the Plan and the actuarial present
value of the retirement benefits that Named Plaintiff contends would have been paid
under the Plan  utilizing the 30-year Treasury rate and  both the actuarial value of the
COLA and early retirement subsidies (if applicable) . There are 17 Group A
Settlement Class members. If the Court grants Class Counsel's Fee Application  and
the request for a Case Contribution Award, it is estimated that Group A Settlement
Class members will receive a net recovery of over 57% of their Potential Losses were
Named Plaintiff to succeed in establishing liability and damages.

**Group B**:  A Settlement Class members is in Group B if he or she elected to
receive a form of life annuity benefit.

Group B Settlement Class members have not suffered any potential losses in the
manner Named Plaintiff has asserted for Group A members. Group B members are not
receiving benefits calculated in the manner challenged by Named Plaintiff in this
litigation. If they selected the form of monthly life annuity and there has been or is in
the future an annual increase in COLA as provided under the Plan, Group B members'
benefits have been and are to continue to be adjusted by COLA annually. In addition,
where applicable, a Group B Settlement Class member is also receiving both their
early retirement subsidy and the applicable COLA in each monthly payment. There is
no other optional benefit form that Named Plaintiff alleges had to be determined using
the 30 year Treasury Rate. As a result, Defendants have contended that Group B
members cannot have suffered any monetary losses based on the claims asserted by
Named Plaintiff. Named Plaintiff has contended that Group B members received
inaccurate information regarding the value of the Period Certain Benefit Options at the
time of retirement and might have chosen a different option if the information
presented had been stated as Named Plaintiff contends it should have been. Under the
Plan of Allocation and despite the Defendants' claims that Group B members suffered
no losses, Group B members are being provided with a monetary payment to fully

resolve claims asserted by Named Plaintiff against Defendants for alleged disclosure violations concerning the disclosures given to them with regard to the relative value of the optional forms of benefit that were available to them at retirement. Although Group B Settlement Class members elected a life annuity and there is no claim in the lawsuit that the benefits they are currently receiving were miscalculated, prior to the Fee Award and the Case Contribution award, the Plan of Allocation provides Group B members with approximately 10% of each Group B member's proportionate share of the Settlement Fund calculated  based  on the difference between the values disclosed at retirement for the Period Certain Benefit Options and the values that Named Plaintiff contends should have been disclosed for those options. If the Court grants Class Counsel's Fee Application and the request for a Case Contribution Award, it is estimated that Group B Settlement Class members will receive a net recovery of slightly less than 7% of their proportional share based on this difference.  There are 7 Group B Settlement Class members.

There will be no reversion of any amount of the Settlement Fund to Defendants. With respect to both Group A and Group B Settlement Class members, if any of the participants are deceased or die before payment is made, there are provisions in the Settlement Agreement for payment of Settlement Benefits to the Eligible Beneficiary or Eligible Estate Representative of such person.

By way of summary, the key provisions of the Settlement Agreement provide as follows:

- The payment by Defendants of a Gross Settlement Amount of $4,085,000 for the payment of Settlement Benefits, Fee Award and Case Contribution award.
- Joint request for certification of a Settlement Class as set forth above;
- Releases of all claims that were asserted or could have been asserted by Settlement Class members in the lawsuit except for Individual Mistakes and releases by Defendants of any claims that Settlement Class members are overpaid or will be overpaid as a result of the payment of the additional benefits provided in the

Settlement; and

• Notice to Settlement Class members and administration of the settlement payments to be undertaken by Defendants at no cost to Named Plaintiff or Settlement Class members.

## III.   RATIONALE FOR SETTLEMENT

After carefully considering the claims in the case and Defendants' defenses, all of the evidence uncovered in the litigation, and the risks attendant in continuing the litigation, together with the fact that even if Named Plaintiff were to prevail, significant time would elapse before a victory would result in actual payment of any additional benefits to Named Plaintiff or any class members (all of whom are retirees), Class Counsel and Named Plaintiff agreed to a Settlement that provides a substantial recovery to all of the Settlement Class members.

Defendants denied and continue to deny that they violated ERISA or the terms of the Plan.  From the outset, Named Plaintiff and the putative class members have faced a number of risks including, but not limited to, risks related to establishing liability under complex ERISA statutory and Plan claims, the risk that a class might not be certified, and risks associated with determining damages including significant disputes regarding the factors to be utilized for estimating COLA in the conversion from a life annuity to a Period Certain Benefit Option. At the time Settlement was reached, summary judgment motions were *sub judice* and under the Court's scheduling order, pretrial preparation was underway and a trial date was rapidly approaching.   The Court ruled that if it were to deny both parties' motions for summary judgment and grant Named Plaintiff's Rule 56(d) motion, that Named Plaintiff could bring a motion for class certification following that discovery. Thus, there was a risk that significant additional discovery and motion practice would be necessary, along with additional expert and rebuttal reports. All of the foregoing would have caused significant additional delay and the likelihood of an appeal would have delayed the case even further. The Settlement provides certainty and substantial

9

1  benefits to the Settlement Class, years earlier than would otherwise have been

2  possible.

3  **IV.   CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED**

4        **A.     The Settlement Class Meets the Requirements of Rule 23(a)**

5        To certify a settlement class, the Court must find that the prerequisites of Rule

6  23(a) are met and that the settlement class meets the requirements of at least one of the

7  provisions of Rule 23(b).  Each of the Rule 23(a) requirements are met as to the

8  proposed settlement class.

9        **1.     The Requirement of Rule 23(a)(1) that Joinder is Impracticable is Met**

10        Although the settlement class here is modest in size, it meets the requirements

11  of Rule 23(a) that joinder is impracticable.  This requirement is met if it would be

12  extremely difficult or inconvenient to join all class members.  *See* Alba Conte &

13  Herbert Newberg, 1 *Newberg on Class Actions* § 3:5, at p. 247 (4th ed. 2002).  Where

14  a class is not very numerous, factors including the ability of individual claimants to

15  institute separate suits and whether injunctive or declaratory relief is sought, should be

16  considered in determining the impracticability of joinder.  *See Escalante v. California*

17  *Physicians' Service*, 309 F.R.D. 612, 618 (C.D. Cal. 2015) (citing *Jordan v. Los*

18  *Angeles Cnty.*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459

19  U.S. 810, 103 S.Ct. 35 (1982)).  Courts routinely apply a "relaxed" numerosity

20  requirement in cases like this one which seek primarily declaratory and injunctive

21  relief.  *Id*.; *see also Weiss v. New York Hospital*, 745 F.2d 786, 808 (3d Cir. 1984);

22  *Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 275 (10th Cir. 1977);

23  *Jackson v. Danberg*, 240 F.R.D. 145, 147 (D. Del. 2007); *Bublitz v. E.I. Du Pont de*

24  *Nemours and Co.*, 202 F.R.D. 251, 255-56 (S.D. Iowa 2001). Granting certification of

25  a settlement class would not only be in the interests of judicial economy but would

26  also avoid duplicative suits brought by other putative settlement class members

27  demanding the same relief.  *See Escalante*, 309 F.R.D. at 618.

28        Here, the putative class members are all retirees and may now be dispersed

10

given that their employment has ended, which makes certification of a settlement class more appropriate. *See McCluskey v. Trustees of Red Dot Corp. Employee Stock Ownership Plan & Trust*, 268 F.R.D. 670, 675 (W.D. Wash. 2010) (numerosity requirement satisfied in class of 27 known class members, 3 of which lived outside of district where court was located). In *McCluskey*, the court cited eight cases where courts found the numerosity requirement was satisfied for classes that were smaller than 27 class members.   *Id.* at 674. *See also Gaspar v. Linvatec Corp.,* 167 F.R.D. 51, 56 (N.D.Ill. 1996) (certifying class of 18 class members); *In re Beer Distrib. Antitrust Litig.*, 188 F.R.D. 557, 562 (N.D. Cal. 1999) (class of more than 25 geographically dispersed class members); *Tietz v. Bowen*, 695 F.Supp. 441, 445 (N.D. Cal. 1987) (class of 27 geographically diverse retirees); *Monarch Asphalt Sales Co., Inc. v Wilshire Oil Co. of Texas*, 511 F.2d 1073, 1077 (10th Cir. 1975) (class of 37);  *Alba v. Papa John's USA, Inc.*, No. CV 05-7487, **2007 WL 953849 (C. D. Ca. Feb. 7, 2007) (class of** approximately 46 Southern California store managers); *Phipps v. Sheriff of Cook County,* 249 F.R.D. 298, 300 (N.D.Ill. 20008) (class of 50 sufficient); *Winkler v. DTE, Inc.,* 205 F.R.D. 235, 240 (D. Ariz. 2001) (class of 87 sufficient).

Certifying a settlement class in this case is especially appropriate given that this is a pension plan and, consistent with fiduciary obligations under ERISA, strives to treat similarly situated participants uniformly. All participants who retired and received benefits, and either whose benefits were calculated in the manner being challenged by here or received disclosures regarding the value of benefits as challenged here, are included and will benefit from the Settlement. In contrast, on an individual basis, those participants whose claims and potential recoveries are small might not succeed in obtaining counsel to pursue their claims (including the retention of actuarial experts) or be met with multiple affirmative defenses if they did pursue their claims.  Likewise, settlement class certification brings finality to the Plan, allowing it to compromise knowing it will not be met with additional claims requiring the expenditure of resources.

## 2.      The Commonality Requirement under Rule 23(a)(2) Is Met

In order to establish commonality, there must be a "common contention… That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011). Commonality only imposes a "limited burden" upon the plaintiff given that it "only requires a single significant question of law or fact." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012). "What matters to class certification ... is not the raising of common 'questions'-even in droves-but rather the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Bryant v. Ariz. Pipe Trades Pension Trust Fund*, No. CV-13-01563-PHX-GMS, 2015 WL 300385, at *4 (D. Ariz. Jan. 22, 2015) (quoting *Dukes*, 564 U.S. 338 at 350). *See also Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1154 (9th Cir. 2016) (commonality satisfied where complaint alleged company required sales associates to do work not 'directly involved in selling' and failed to compensate the sales associates for such work, in violation of California's minimum wage laws); *Stockwell v. City & Cnty. of San Francisco*, 749 F.3d 1107, 1116 (9th Cir. 2014) ("In short, the officers are all challenging a single policy they contend has adversely affected them. The question whether the policy has an impermissible disparate impact on the basis of age necessarily has a single answer"); *Abdullah v. U.S. Sec. Associates, Inc.*, 731 F.3d 952, 963 (9th Cir. 2013) (finding commonality satisfied in case  alleging violation of California labor laws by security guards required to work through meal times because the legality of the employer's policy is a "'significant question of law,'" that is 'apt to drive the resolution of the litigation' in this case") (quoting *Mazza,* 666 F.3d at 589); *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 299-300 (3d Cir. 2011) (en banc).

The claims here raised common questions of law with respect to the proper interpretation of the Plan capable of classwide resolution. The legal issues of whether

the Plan and ERISA were violated by the failure to use the 30 year Treasury rate when

calculating Period Certain Benefit Options, and failure to include the actuarial value

of early retirement subsidies and COLA reasonably estimated to be payable under a

life annuity during the lifetime of each class member in the determination of Period

Certain Benefit Options is common to all members of the Settlement Class and was

fully briefed on summary judgment.  The legal issue of whether Defendants violated

ERISA by failing to provide material disclosures as required under ERISA and

whether Defendants breached their fiduciary duties with respect to benefit calculations

of the Period Certain Benefit Options were the same for all members of the Settlement

Class and capable of common resolution.  *See, e.g.*, *Parsons v. Ryan*, 754 F.3d 657,

677 (9th Cir. 2014) ("The putative class and subclass members thus all set forth

numerous common contentions whose truth or falsity can be determined in one stroke:

whether the specified statewide policies and practices to which they are all subjected

by ADC expose them to a substantial risk of harm."); *Escalante v. Cal. Physicians'

Svc.*, 309 F.R.D. 612, 618 (C.D. Cal. 2015) (commonality satisfied when answer to

common questions "would result in an answer that goes to the heart of the resolution

of Plaintiff's claims"); *Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension

Fund*, No. 14-CV-05596-JST, 2015 WL 5569462, at *3 (N.D. Cal. Sept. 22, 2015)

(commonality satisfied "because Plaintiffs' challenge to the contingent amendment

under ERISA and the PPA entails consideration of questions applicable to all

members of the class as a group"); *Bryant*, 2015 WL 300385, at *4 (commonality

requirement satisfied where common questions include whether class members had

accrued rights and benefits under plan amendment and whether the Trustees violated

the terms of the Plans and ERISA by failing to provide adequate notice prior to the

adoption of second amendment and whether implementation of second amendment

breached fiduciary duties); *Rhode Island Public Employees Retiree Coalition v.

Raimondo*, No. PC 2015-1468, 2015 WL 1872189, at *6 (R.I. Super. Apr. 16, 2015)

(commonality requirement satisfied in case alleging reductions to public employee

13

pensions in violation of state constitution on behalf of retired and active public sector employees); *Barnes v. AT & T Pension Ben. Plan-NonBargained Program*, 273 F.R.D. 562, 568 (N.D. Cal. 2011) (granting class certification challenging the method of calculation for pension plan participants); *Pender v. Bank of Am. Corp.*, 269 F.R.D. 589, 596 (W.D.N.C. 2010) ("A common question of law predominates when a defendant allegedly miscalculates a plan participant's lump-sum benefit, and (1) the plan's term require the miscalculation or (2) the plan administrators consistently ignore the plan's terms."); *George v. Duke Energy Ret. Cash Balance Plan,* 259 F.R.D. 225, 236 (D.S.C. 2009); *Berger v. Xerox Corp. Ret. Income Guarantee Plan,* 338 F.3d 755, 763–64 (7th Cir. 2003); *DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70, 78 (E.D. Va. 2006) (finding commonality satisfied in ERISA class action alleging breach of fiduciary duty: "the central question at issue in this litigation is whether U.S. Airways breached its fiduciary duty."); *Richards v. FleetBoston Fin. Corp.*, 238 F.R.D. 345, 349 (D. Conn. 2006); *In re Ikon Office Solutions, Inc.*, 191 F.R.D. 457, 465 (E.D. Pa. 2000) (finding commonality satisfied: "the appropriate focus in a breach of fiduciary duty claim is the conduct of the defendants, not the plaintiffs.").

### 3. The Typicality Requirement under Rule 23(a)(3) Is Met

Commonality and typicality requirements tend to merge when the plaintiff alleges a common issue or policy that has caused classwide harm, including harm to the plaintiff. *Gen. Tele. Co. v. Falcon*, 457 U.S. 147, 158 n.13 (1982). The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same conduct." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir.1992). *See also Winkler v. DTE, Inc.,* 205 F.R.D. 235, 241 (D. Ariz. 2001) (*citing Brink v. First Credit Resources*, 185 F.R.D. 567, 570 (D. Ariz. 1999)); *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 599 (3d Cir. 2009) (finding typicality where the plaintiff's "legal claims, alleging several breaches of fiduciary duty, are identical to those of the class she seeks to represent.").

14

The test of typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Facciola v. Greenberg Traurig LLP*, CV-10-1025-PHX-FJM, 2012 WL 1021071 (D. Ariz. Mar. 20, 2012) (quoting *Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 984 (9th Cir. 2011)).  Here, Named Plaintiff's claims are typical of those of the Settlement Class and he has alleged the same harm including the alleged miscalculation of his benefits, failure to provide him with actuarially equivalent benefit options, and failure to disclose the relative values of those benefits.

### 4.  Named Plaintiff is an Adequate Class Representative under Rule 23(a)(4)

Rule 23(a)(4) requires that the named plaintiff fairly and adequately represent the interests of the class based on two criteria: 1) the representative must have common interests with the class members, and 2) the named plaintiff will prosecute the action vigorously on behalf of the class. *Hanlon v. Chrysler Corp*. 150 F.3d 1011, 1020 (9th Cir. 1998). Named Plaintiff is an adequate Settlement Class representative. Mr. Tom has vigorously prosecuted the case in the best interests of the putative class members.  He has been actively involved throughout the litigation including in settlement discussions. His interests are clearly aligned with all Settlement Class members who Named Plaintiff alleges were harmed by Defendants' purported violations of the Plan and ERISA. He has no interests antagonistic to the classes. Named Plaintiff has demonstrated by his conduct that he will vigorously prosecute this action and has sufficient incentive to do so. Named Plaintiff vigorously pursued his rights throughout this litigation and has engaged experienced ERISA Class Counsel.

### B.  Class Counsel Has Adequately Represented the Interests of the Class

Rule 23(g) of the Federal Rules of Civil Procedure provides that the Court must find that Class Counsel will fairly and adequately represent the interests of the class. Named Plaintiff respectfully submits that Class Counsel meets the requirements of

15

Rule 23(g) in all respects and will fairly and adequately represent the interests of the class. As set forth in the attached declaration, Martin & Bonnett has substantial experience in employment, ERISA, and class action litigation. Class Counsel has undertaken to prosecute this action vigorously. Counsel has already engaged in substantial discovery. Class Counsel is committed to expending the resources necessary to prosecute this matter and will fairly and adequately represent the interests of the class.  *See, e.g., Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152 (9th Cir. 2001); *A.F. ex rel. Legaard v. Providence Health Plan*, 87 Fed. R. Serv. 3d 417, 2013 WL 6796095, at *7-8 (D. Or. 2013) (proposed class counsel are adequate representatives because the lawyers and firms involved have been appointed lead counsel in numerous class actions and have significant ERISA experience).

### C.     The Settlement Class Meets the Requirements of Rule 23(b)(1)

A mandatory, non-opt out settlement class may be certified under Rule 23(b)(1) where:

> the prosecution of separate actions by or against individual members of the class would create a risk of:
> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
> (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1).  Class certification under both clauses of Rule 23(b)(1) is "common in labor relations cases because defendants often provide unitary treatment to all members of a putative class in this area and thus the rights of absent class members are often implicated by litigation brought by other class members." *Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 397 (E.D. Pa. 2001) (citation, internal quotations and reference to internal alternations omitted.)  Indeed, courts regularly certify classes pursuant to Rule 23(b)(1) in ERISA cases where challenges to the

legality of an amendment and/or issues concerning plan interpretation or reformation
make individual litigation by class members untenable.  *See Frazier v. Honeywell
Savings and Pension Plan*, No. 2:10-cv-10618, Doc. No. 165, at p. 12 (D. Ariz. Nov.
20, 2012) (granting class certification in ERISA action under Rule 23(b)(1)(A));
*Harris v. Koenig*, 271 F.R.D. 383, 394 (D.D.C.  2010); *Humphrey v. United Way*, No.
H-05-0758, 2007 WL 2330933 at *10 (S.D. Tex. August 14, 2007) (certifying class of
ERISA plan participants challenging the validity of a plan amendment pursuant to
Rule 23(b)(1) because "[i]ndividual suits might lead to conflicting orders on the
interpretation of the 96 Plan"); *In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D.
172, 180 (S.D.N.Y. 2006) (certifying under Rule 23(b)(1) a claim seeking reformation
of an ERISA plan "because . . . inconsistent dispositions of these claims by different
courts could create an untenable situation.") (internal quotation omitted); *Richards v.
FleetBoston Fin. Corp.*, 238 F.R.D. 345, 354 (D. Conn. 2006) (same); *Thomas*, 201
F.R.D. at 397 (certifying class under 23(b)(1) because "plaintiffs seek broad
declaratory and injunctive relief related to . . . the terms of the plan.  If this relief were
granted in some actions but denied in others, the conflicting declaratory and injunctive
relief could make compliance impossible for defendants."); *Schutte v. Maleski*, No.
Civ. A. 93-0961, 1993 WL 218898 at *9 (E.D. Pa. June 18, 1993) (granting
certification under 23(b)(1)(A) where plaintiffs sought invalidation of a plan
amendment because "differing outcomes [in individual suits] would make it near
impossible for defendants to implement any one result because of the inherent conflict
from disparate adjudications").

The Settlement Class should be certified under both prongs of Rule 23(b)(1).
Certification under Rule 23(b)(1)(A) is clearly necessary.  The primary issues
presented in this case relate to the proper interpretation of the Plan.  As such, there is a
significant risk that the prosecution of separate actions by individual members of the
class would result in incompatible interpretations of the Plan or in conflicting
injunctive and/or declaratory relief.  The Court should certify the Settlement Class

17

pursuant to Rule 23(b)(1)(A) to protect against the very real danger that inconsistent adjudications in multiple individual actions would lead to incompatible standards of conduct. *See Humphrey*, 2007 WL 2330933 at *10; *In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. at 180; *Richards*, 238 F.R.D. at 354; *Thomas*, 201 F.R.D. at 397; *Schutte*, 1993 WL 218898 at *9.

Certification under Rule 23(b)(1)(B) is also appropriate because any "adjudication[] with respect to individual members of the class . . . would as a practical matter be dispositive of the interests of the other members not parties to the adjudication[]." Fed. R. Civ. P. 23(b)(1)(B). In this case, the Settlement would obviate the need for the Court's interpretation of the Plan and ERISA requirements, but if the case were to continue, the Court's rulings on those issues and its adjudication of Named Plaintiff's request for declaratory, injunctive, and other appropriate equitable relief would necessarily affect the interests of all other similarly situated participants. Thus, this Court should also certify the Settlement Class under Rule 23(b)(1)(B). *See* .D. Ohio Mar. 28, 2012) (certifying ERISA class under Rule 23(b)(1)(A) and (b)(1)(B)); *Savani v. Washington Safety Mgmt. Solutions, LLC*, 1:06-CV-02805-MBS, 2012 WL 3757239, at *4 (D.S.C. Aug. 28, 2012) (finding class certification in ERISA case alleging anti-cutback claims appropriate under 23(b)(1)(A) and (B)).

## V. THE SETTLEMENT MEETS THE STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(e)

"[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litigation*, 516 F.3d 1095, 1101 (9th Cir. 2008) (citing *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1993)). The Ninth Circuit has stated: "it must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation...." *Id.* (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)).

Although the procedure for approval of a class action settlement is not delineated specifically in Fed. R. Civ. P. 23(e), a two-step procedure is set forth and approved in the Federal District Court's Manual for Complex Litigation (Fourth), §21.632 - §21.634, at 320-22 (4th ed. 2004), and generally followed by federal courts considering class action settlements, *see, e.g.*, *In re McKesson HBOC, Inc. ERISA Lit.*, 391 F.Supp.2d 844, 847 (N.D.Ca. 2005); *Arnold v. Arizona Dep't. of Pub. Safety*, CV-01-1463-PHX-LOA, 2006 WL 2168637, *4 (D. Ariz. July 31, 2006) (citing *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991)); *see also Tennessee Ass'n of Health Maint. Org., Inc. v. Grier*, 262 F.3d 559, 565-66 (6th Cir. 2001). First, the court conducts a preliminary approval or pre-notification hearing to determine whether to preliminarily approve the settlement agreement. *Arnold*, 2006 WL 2168637 at *4; *Jiffy Lube*, 927 F.2d at 158. Second, assuming that the court grants preliminary approval and notice is sent to the class, the court conducts a "fairness hearing," which provides all interested Parties with an opportunity to be heard on the proposed settlement. *Id.* The ultimate purpose of this procedure is to ensure that the settlement is "fair, reasonable and adequate." *Id.*; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

As is the case with final approval, the district courts have wide discretion in making the first-stage determination regarding the reasonableness of particular class action settlements. *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986); *In re Mego Financial Corp. Securities Lit. v. Nadler*, 213 F.3d 454, 458 (9th Cir. 2000). "The Court should consider whether the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiency, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *Horton v. USAA Cas. Ins. Co.*, 266 F.R.D. 360, 363 (D. Ariz. 2009) (citations omitted). The Supreme Court has stated that approval of a class action settlement is committed to the "sound discretion of the district courts to appraise the reasonableness of particular class-action settlement on a

19

case-by-case basis, in light of all the relevant circumstances." *Evans*, 475 U.S. at 742; *see also Hanlon*, 150 F.3d at 1026 (the decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is "exposed to the litigants, and their strategies, positions and proof") (internal quotations omitted).  The Supreme Court has cautioned that in reviewing a proposed class settlement, courts should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n. 14 (1981); *Evans*, 475 U.S. at 726-27; *Staton v. Boeing Co.*, 327 F.3d 938, 963 n.16 (9th Cir. 2003).  Instead, courts have consistently held that the function of the court reviewing a settlement is to determine whether the proposed settlement taken as a whole is fundamentally fair, adequate, and reasonable, not to rewrite the settlement agreement or to resolve issues intentionally left unresolved by the parties.  *Hanlon*, 150 F.3d at 1026 (citing *Officers for Justice*, 688 F.2d at 628).

The Ninth Circuit has outlined eight factors that should be considered in determining whether a settlement agreement is fundamentally fair, adequate, and reasonable:

(1) the strength of the plaintiffs' case;

(2) the risk, expense, complexity, and likely duration of further litigation;

(3) the risk of maintaining class action status throughout the trial;

(4) the amount offered in settlement;

(5) the extent of discovery completed, and the stage of the proceedings;

(6) the experience and views of counsel;

(7) the presence of a governmental participant; and

(8) the reaction of the class members to the proposed settlement.

*See, e.g., Staton*, 327 F.3d at 959 (citing *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003)); *Mego Financial Corp.*, 213 F.3d at 458; *Hanlon*, 150 F.3d at 1026; *Draney v. Wilson, Morton, Assaf & McElligott*, Civ. 79-1029, 1985 WL 5820, *1 (D. Ariz. Sept.

30, 1985).  Courts have noted that this list is not exhaustive, the identified factors should not be viewed as more significant than other factors, and not all factors will apply to every class action settlement.  *Torrisi v. Tuscon Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993); *Officers for Justice*, 688 F.2d at 625.  The Ninth Circuit has further noted that because of the danger that class action settlements could compromise the interests of class members due to the individual interests and incentives of class representatives and class counsel, the district court must also consider whether there was fraud, overreaching, or collusion in reaching the settlement.  *Staton*, 327 F.3d at 960.

When examined under these applicable criteria, the Settlement is not only fair, reasonable, and adequate, but an excellent result for the Settlement Class members.

**A.     The Amount Offered in Settlement Is Substantial and Favors Settlement.**

The Ninth Circuit has previously noted that "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. [A] proposed settlement is [thus] not to be judged against a hypothetical or speculative measure of what *might* have been achieved[.]" *Officers for Justice*, 688 F.2d at 625.  "Estimates of a fair settlement figure are [to be] tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)." *In re Toys R Us-Delaware, Inc.*, 295 F.R.D. at 453.

As set forth above, the $4,085,000 offered in the Settlement for 24 Settlement Class Members is substantial and will provide Group A members with a significant percentage of the value of their potential losses, as well as provide Group B members with a monetary recovery even though Defendants have asserted Group B members suffered no monetary loss. Class Counsel intends to petition the Court for an award of attorneys' fees of 30% of the Settlement Fund plus costs and expenses, and for a Case Contribution award for Named Plaintiff in the amount of $35,000. The proposed Notice explains the amounts that will be sought.  Class Counsel will establish in their

motion for fees and costs, to be filed before the Final Approval Hearing, that the amount requested for attorneys' fees is reasonable given the facts and circumstances of this case, including the significant results achieved, the extent of the efforts of Class Counsel on difficult and highly complex ERISA pension benefit claims, and Class Counsel's lodestar's cross-check and relevant comparable fee awards. *See Knight v. Red Door Salons, Inc.,* 2009 WL 248367 (N.D. Cal 2009)(noting that common fund cases usually involve awards around 30%); *In re Activision Sec. Litig.,* 723 F.Supp. 1373, 1377 (N.D. Cal. 1989) (same); *Barbosa v. Cargill Meat Solutions, Corp.,* 297 F.R.D. 431 (E.D. Cal. 2013) (in awarding a 33% fee the Court relied on 9 other common fund cases awarding between 33.3 percent and 31.25 percent attorney fees); *Adoma v. Univ. of Phoenix,* 913 F.Supp.2d 964 (E.D. Cal 2012) (awarding 29% fee). Likewise, given Named Plaintiff's involvement in the case and the services he provided, the Case Contribution award is warranted. *See, e.g.*, *Singer v. Becton Dickinson and Co.*, 2010 WL 2196104 (S.D. Cal. Jun. 1, 2010) (awarding $25,000 case contribution award more than seven years ago in wage and hour case); *Smith v. Krispy Kreme Doughnut Corp.*, 2007 WL 119157 (M.D N.C. Jan. 10, 2007) (ERISA case awarding $30,000 in case contribution awards); *Will v. General Dynamics Corp.*, 2010 WL 4818174 (S.D. Ill. Nov. 22, 2010) (ERISA case awarding $75,000 in case contribution awards approximately seven years ago ($25,000 per plaintiff)).

On a gross basis the settlement provides for approximately 85.78% of the amount that Class Counsel's actuary has calculated to be the total value of alleged damages to Group A Settlement Class members prior to allocation of attorneys' fees and costs. For Group B Settlement Class members whose claims stem from Named Plaintiff's claims that he and others were provided with inaccurate and insufficient relative value disclosures at retirement, the amount offered in settlement is also substantial, averaging approximately $11,802 per person. If the Fee Application and Case Contribution award are approved, the net recovery will be approximately over 57.5% for Group A members and nearly 7% for Group B members (as measured by

22

the difference between the stated value of the Period Certain Benefit Option in each Group B member's disclosure and what Named Plaintiff claims that disclosure should have stated).

The Settlement is clearly appropriate in light of the uncertainties of trial. *See, e.g., Mego Financial Corp.*, 213 F.3d at 459 (approving a settlement that was 42% of estimated damages and stated that even using the objectors' damages estimates, a settlement of 14% would be fair).

**B.**     **The Strength of Named Plaintiffs' Case and the Significant Risk, Expense, Complexity and Likely Duration of Further Litigation All Favor the Settlement.**

ERISA is a complex, demanding and evolving area of the law requiring the devotion of significant resources both by the Parties and the Court.  This case has been vigorously litigated since the outset in February 2016 and the claims have been in process since 2014 when Mr. Tom initially filed his administrative claim and appeal with the Plan and thereafter sought documents. At the time of Settlement there were outstanding dispositive motions pending in this Court and pre-trial pleadings were soon to be filed.  The Settlement represents a resolution of this entire litigation in addition to providing the Settlement Class with an immediate and substantial monetary recovery with no future risks attached. Given the complexity of the issues, the risks to the Settlement Class, and the delay of this case inherent in completing motion practice and a potential trial, followed by a potential appeal, Named Plaintiff and Class Counsel have determined that the Settlement is fair, reasonable, and in the best interests of the Settlement Class.

Defendants are represented by highly experienced and competent counsel. Defendants have forcefully defended their actions and aggressively litigated this case. They plan to continue in their vigorous defense of the claims up through trial and any appeal.  A ruling in favor of Defendants on summary judgment and/or further rulings regarding class certification and/or the amount of damages could deprive the Settlement Class members of the opportunity to receive monetary and/or other relief

1   for their claims.  The Settlement assures that Settlement Class members who allegedly

2   suffered Potential Losses will recover a significant portion of those Potential Losses

3   from this litigation.  The Settlement also significantly minimizes the delay and costs

4   entailed in litigation of these issues, and advances a monetary recovery to Settlement

5   Class members, all of whom are already retired.

6          The risks, delay, and expense that will be avoided by the Settlement are

7   significant.  If the Settlement is not approved, a substantial and significant amount of

8   additional work will need to be done, including, depending on the outcome of the

9   pending motions, completion of discovery and discovery dispute resolution, class

10  certification proceedings, additional dispositive motions, and a potential trial.  This

11  would entail significant expert expenses and potentially hundreds, if not thousands of

12  hours of additional attorney and paralegal time. For example, if the Court rules there

13  are triable issues of fact as to the amount of damages, a trial could involve a "battle of

14  the experts" resulting in significant time and a great deal of expense beyond that

15  already incurred by Class Counsel in prosecuting this case.  The Settlement saves the

16  Parties and the Court the time, cost, and effort of resolving these claims in Court and

17  provides relief for eligible Settlement Class members. *See Nat'l Rural Telecom. Coop.*

18  *v. DirecTV, Inc.*, 221 F.R.D. 523, 526 (C.D.Cal. 2004) (unless settlement is clearly

19  inadequate, approval is preferable to lengthy and expensive litigation with uncertain

20  results).

21  **C.    The Risk of Maintaining Class Action Status Favors the Settlement.**

22         There is no current motion for class action certification, and Defendants have

23  not determined whether, should the litigation continue, they would oppose a future

24  motion for class certification following discovery.  Because there is a significant risk

25  that class members may not obtain certification and may not recover at all if a class is

26  not certified, this factor weighs in favor of final approval of the Settlement.  *See, e.g.*,

27  *McKenzie v. Federal Exp. Corp.*, No. CV 10–02420 GAF (PLAx), 2012 WL 2930201,

28  *4 (C.D.Cal. July 2, 2012) ("[S]ettlement avoids all possible risk [of decertification].

This factor therefore weighs in favor of final approval of the settlement"); *Catala v. Resurgent Capital Services L.P.*, Civil No. 08cv2401 NLS, 2010 WL 2524158, *3 (S.D.Cal. June 22, 2010) ("The avoidance of risk of maintaining class action certification throughout trial favors settlement of this action").

**D.    Class Counsel  has Performed Sufficient Discovery, and the Proceedings are Sufficiently Advanced, to Reach an Informed Settlement Decision.**

In the class action context, while "formal discovery is not a necessary ticket to the bargaining table[,]" the proposed Settlement has been reached after more than a year of highly contested litigation with substantial discovery. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (internal citation and quotation omitted). During this time, Class Counsel has conducted an extensive investigation and discovery, including the completion of discovery that resulted in the production of over 5,000 pages of documents and electronic discovery, an expert report, an exchange of benefits data and files for settlement purposes, and obtaining a declaration and other information from the prior L-3 plan administrator. Class Counsel has also worked with an actuary who is the former chief pension actuary of the Internal Revenue Service and who played a significant role in determining each individual Settlement Class member's damages, developing the Plan of Allocation, and calculating Settlement Benefits. The extent of the completed discovery favors a finding that the Settlement is fair, reasonable, and adequate. *In re Toys R Us-Delaware, Inc.*, 295 F.R.D. at 454 ("The more the discovery completed, the more likely it is that the Parties have a clear view of the strengths and weaknesses of their cases.") (internal citation and quotation omitted).

**E.    The Settlement Was Negotiated by Highly Experienced Class Counsel Who View it as Fair, Reasonable and Adequate.**

As set forth in the attached declaration, proposed Class Counsel, Susan Martin and the firm of Martin & Bonnett have extensive ERISA and class action experience. The recommendations of Class Counsel "should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)

25

(citations omitted). Additionally, courts may attach a presumption of fairness and adequacy to a class settlement reached in an arm's-length negotiation among experienced, capable counsel, after meaningful discovery. Manual for Complex Litigation (Third ed.) § 30.42 (1995).

Class Counsel have the necessary skill and experience to litigate an ERISA class action case, have extensive experience doing such and are well-equipped to negotiate a fair settlement for the Settlement Class.  Class Counsel's opinion deserves great weight both because of its familiarity with the litigation and because of its extensive experience in similar actions.  *See In re Wash. Pub. Power Supply Sys. Sec. Lit.*, 720 F. Supp. 1379, 1392 (D. Ariz. 1989) (citing *Officers for Justice*, 688 F.2d at 625).

Class Counsel has carefully analyzed the issues and evidence, the risks to the Settlement Class in continuing the litigation, the total potential damages, and the benefits and detriments of the Settlement reached with Defendants.  Based on an exhaustive review of the relevant factors in this case, Class Counsel is satisfied that the Settlement is fair, reasonable, adequate and in the best interests of Named Plaintiff and the Settlement Class.

## F.     The Settlement Was Reached After Extensive and Adversarial Negotiations, and Is Not a Product of Collusion.

There is no doubt that the Settlement is the product of legitimate arm's-length negotiations between Class Counsel and counsel for the Defendants and is the result of a high-level and hard-fought negotiation reached with a neutral mediator. This case was vigorously contested from start to finish. It took two full days of mediation and additional conferences in order to reach the resolution.

During the mediation effort, both Class Counsel and Defendants represented the interests of their respective clients vigorously and devoted a considerable amount of time, effort, and financial resources to secure the terms of the Settlement before this Court. There was no collusion whatsoever between the Parties in reaching the Settlement.

## VI.    THE FORM OF CLASS NOTICE SATISFIES THE REQUIREMENTS OF RULE 23

The parties request that the Court approve and authorize the issuance of Class Notice and Change of Information Form, in the form attached as Exhibits A and B to the Settlement Agreement to the Settlement Class via first-class mail.

The notice to be issued to Settlement Class members concerning this proposed Settlement satisfies due process and Rule 23. Notice to class members must be "reasonably calculated, under all the circumstances, to apprise interested Parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  The notice should generally describe the terms of the settlement "in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374 (9th Cir. 1993) (citing *In re Cement and Concrete Antitrust Lit.*, 817 F.2d 1435, 1440 (9th Cir. 1987)).

The proposed form of Class Notice describes in plain English the terms of the Settlement with estimated individual recoveries, how those amounts were calculated based upon the Plan of Allocation, the considerations that led Class Counsel to conclude that the Settlement is fair and adequate, the percentage and exact amount of attorneys' fees and approximate amount of costs that will be sought, the procedure for objecting to the Settlement, and the date and place of the Fairness Hearing.  Under the Settlement, the Retirement Plan shall mail the Class Notice within fourteen (14) days of the Order Granting Preliminary Approval. The mailing addresses to be used by Defendants are likely to be correct because the Settlement Class consists of retirees who are or were recently receiving benefits from Defendants.

## CONCLUSION

For the foregoing reasons, the parties respectfully request that the Court certify the Settlement Class, preliminarily approve the Settlement, and direct notice in accordance with the proposed order attached to the Settlement Agreement at Ex. E.

1

2

Dated:  July 14,  2017                  MARTIN & BONNETT, PLLC

3

4                                                By:   s/Susan Martin
                                                       Susan Martin (*Pro Hac Vice*)
                                                       Attorneys for Plaintiff CURTIS TOM

5      Dated: July 14, 2017                 MORGAN, LEWIS & BOCKIUS LLP

6                                                By:  s/Stephanie R. Reiss

7                                                       Stephanie R. Reiss   (*Pro Hac Vice*)
                                                       Attorneys for Defendants COM DEV

8                                                      USA, LLC; COM DEV USA, LLC
                                                       EMPLOYEE BENEFIT PLANS

9                                                      COMMITTEE; COM DEV USA
                                                       RETIREMENT PLAN

10

11

12

13

14

15    Filer's Attestation: Pursuant to Local Rule 5-4.3.4(a)(2)(i), Susan Martin hereby

16    attests that concurrence in the filing of this document and its contents was obtained
       from all signatories listed.

17

18

19

20

21

22

23

24

25

26

27

28