SUSAN MARTIN (*Pro Hac Vice*)
  smartin@martinbonnett.com
JENNIFER KROLL (*Pro Hac Vice*)
  jkroll@martinbonnett.com
MARTIN & BONNETT, PLLC
4647 N. 32nd St., Suite 185
Phoenix, AZ 85018
Telephone:   (602) 240-6900
Facsimile:    (602) 240-2345

PETER K. STRIS (SBN 216226)
  peter.stris@strismaher.com
VICTOR O'CONNELL (SBN 288094)
  victor.oconnell@strismaher.com
STRIS & MAHER LLP
725 South Figueroa Street, Suite 1830
Los Angeles, CA 90017
Telephone:   (213) 995-6800
Facsimile:    (213) 261-0299

*Attorneys for Plaintiff and*
*all others similarly situated*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS TOM, on behalf of himself and all others similarly situated,<br><br>       Plaintiff,<br><br>       v.<br><br>COM DEV USA, LLC; COM DEV USA, LLC EMPLOYEE BENEFIT PLANS COMMITTEE; COM DEV USA RETIREMENT PLAN,<br><br>       Defendants. | Case No. 2:16-CV-01363 PSG (GJSx)<br><br>**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT AND ENTRY OF FINAL JUDGMENT**<br><br>**(Final Approval hearing to be held December 4, 2017 at 1:30 p.m.)** |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................. 1

II.     BACKGROUND ................................................................................... 1

III.    THE SETTLEMENT CLASS AND TERMS OF THE SETTLEMENT ...... 2

IV.     THE SETTLEMENT MEETS RULE 23(E)'S STANDARDS FOR FINAL APPROVAL. ...................................................................................... 6

    A.      The Settlement Amount Is Substantial and Favors Final Approval. .... 8

    B.      The Strength of Named Plaintiffs' Case and the Significant Risk, Expense, Complexity, and Likely Duration of Litigation All Favor Final Approval. ............................................................................... 10

    C.      The Risk of Maintaining Class Action Status Favors Final Approval. 11

    D.      Class Counsel has Performed Sufficient Discovery, and the Proceedings are Sufficiently Advanced, to Reach an Informed Settlement Decision. ......................................................................... 13

    E.      The Settlement Was Negotiated by Highly Experienced Class Counsel Who View it as Fair, Reasonable and Adequate. ................. 13

    G.      The Reaction of Class Members Favors Final Approval of the Settlement. .................................................................................... 15

V.      CONCLUSION ................................................................................. 15

i

# TABLE OF AUTHORITIES

**Cases**

*Boyd v. Bechtel Corp.*,
   485 F. Supp. 610 (N.D. Cal. 1979) ........................................................ 13

*Carson v. Am. Brands, Inc.*,
   450 U.S. 79 (1981) ................................................................................ 7

*Catala v. Resurgent Capital Sers. L.P.*,
   No. 08-cv-2401-NLS, 2010 WL 2524158 (S.D.Cal. June 22, 2010) ...................... 12

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1993) .............................................................. 7

*Downey Surgical Clinic, Inc. v. Optuminsight, Inc.*,
   No. CV09-5457 PSG (JCX), 2016 WL 5938722 (C.D. Cal. May 16, 2016) ........... 14

*Ellis v. Naval Air Rework Facility*,
   87 F.R.D. 15 (N.D. Cal. 1980) ............................................................. 13

*Evans v. Jeff D.*,
   475 U.S. 717 (1986) ............................................................................ 7

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ......................................................... 7, 8

*In re Celera Corp. Sec. Litig.*,
   No. 5:10-CV-02604-EJD, 2015 WL 1482303 (N.D. Cal. Mar. 31, 2015) ............. 9

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ............................................................. 7

*In re Toys R Us-Delaware, Inc. FACTA Litig.*,
   295 F.R.D. 438 (C.D. Cal. 2014) .................................................... 8, 13

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
   720 F. Supp. 1379 (D. Ariz. 1989) ...................................................... 14

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ...................................................... 9, 13

*McKenzie v. Federal Exp. Corp.*,
   No. CV 10–02420 GAF (PLAx), 2012 WL 2930201,at (C.D. Cal. July 2, 2012)... 12

*Mego Fin. Corp. Secs. Litig. v. Nadler*,
   213 F.3d 454 (9th Cir. 2000) ........................................................ 7, 9

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) .................................................. 11, 15

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) .................................................. 7, 8, 14

*Relente v. Viator, Inc.*,
   No. 12-cv-05868, 2015 WL 2089178 (N.D. Cal. May 4, 2015) ...................... 15

*Rojas v. Zaninovich*,
   No. 1:09-CV-0705-AWI-JLT, 2015 WL 3657172 (E.D. Cal. June 11, 2015) .......... 9

*Rosales v. El Rancho Farms*,
  No. 1:12-CV-01934-AWI, 2015 WL 4460918 (E.D. Cal. July 21, 2015) ................. 9

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ....................................................................... 7, 8

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ............................................................................ 8

**Rules**

Rule 23(e) of the Federal Rules of Civil Procedure ....................................... 1

**Other Authorities**

Manual for Complex Litigation (3d ed.) §§ 30.42 (1995) ............................ 14

iii

1

2 **I.      INTRODUCTION**

3          Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and the Order of

4 this Court dated September 18, 2017 (Dkt. 149) preliminarily approving the Class

5 Action Settlement Agreement ("Agreement") (Dkt. 147-1), and in accordance with the

6 provisions of the Agreement, Plaintiff Curtis Tom, on behalf of himself and the

7 Settlement Class,[1] hereby respectfully requests that the Court grant final approval of

8 the Agreement to resolve the claims in this case.  This motion is supported by the

9 following declarations filed herewith: the Declaration of Susan Martin in Support of

10 Motion for Final Approval of Class Action Settlement and Motion for Attorneys'

11 Fees, Costs and Case Contribution Award dated October 30, 2017 ("10/30/17 Martin

12 Decl."); the Declaration of Curtis Tom in Support of Motion for Final Approval of

13 Class Action Settlement and Motion for Attorneys' Fees, Costs and Case Contribution

14 Award dated October 30, 2017 ("Tom Decl."); the Declaration of Jennifer Kroll dated

15 October 30, 2017 ("Kroll Decl."); the Declaration of Stephanie Reiss ("Reiss Decl.");

16 and the Declaration of Lisa Dooley ("Dooley Decl."), and the record before the Court.

17          In addition to a motion for final approval, the Court requested additional

18 support for Plaintiff's counsel's award of attorneys' fees and costs and Plaintiff's

19 incentive award, (Dkt. 149 at 14) which is included in Plaintiff's Motion for

20 Attorneys' Fees, Costs and Case Contribution Award filed contemporaneously with

21 this motion.

22 **II.     BACKGROUND**

23          The facts, claims asserted by Named Plaintiff, and procedural history of this

24 case are set forth in the parties' Joint Motion for Class Action Certification and

25 Preliminary Approval of Class Action Settlement, Dkt. 147, as discussed in the

26

27
_____

28 [1] Capitalized terms are as set forth in the Agreement.

1   Court's Order granting the Motion for Class Certification and Preliminary Approval
2   of the Class Action Settlement, Dkt. 149.

3          On July 14, 2017, the Parties jointly moved for class action certification for
4   settlement purposes and preliminary approval of the Agreement. On September 18,
5   2017, the Court entered an order granting the motion for class certification and
6   preliminarily approving the Agreement. Dkt. 149. As set forth in  the Reiss Decl. and
7   Dooley Decl., in accordance with the Court's September 18, 2017 Order, on October
8   3, 2017, Defendants mailed personalized notices of the Settlement to the  Settlement
9   Class members, together with change of information forms (revised per the Court's
10  directive to eliminate the requirement to provide full Social Security numbers). As
11  further set forth in the Dooley Declaration, none of the notices were returned by the
12  post office.  Dooley Decl. ¶ 3.

13  **III.   THE SETTLEMENT CLASS AND TERMS OF THE SETTLEMENT**

14         The Settlement resolves this litigation by providing substantial monetary relief
15  to the 24 members of the Settlement Class. The Gross Settlement Amount,  consisting
16  of the Settlement Benefits, Fee Award as determined by the Court, and a Case
17  Contribution Award as determined by the Court for Named Plaintiff's time and
18  services devoted to the class, totals $4,085,000. Settlement Class members will receive
19  S e t t l e m e n t   B e n e f i t s ,  which increase the pension benefits they were paid or were
20  informed they were entitled to under the Com Dev USA Retirement Plan ("Plan"),
21  based on this Gross Settlement Amount less the amount the Court determines for Class
22  Counsel's attorneys' fees and costs and for a Case  Contribution Award to Named
23  Plaintiff.

24  **The Settlement Class**

25         The Court has approved the following Settlement Class:

26  Participants in Part Two or Part Three of the Plan who retired and
27  commenced receipt of benefits and who are listed on the Plan of
    Allocation and on Exhibit C to the Settlement Agreement and fall within
28  either Group A or Group B defined below (or their alternate payee listed

2

on Exhibit C) and every derivative claimant of such person who is an Eligible Beneficiary or Eligible Estate Representative as set forth in the Settlement Agreement.

**Group A** includes individuals:

(1): who were paid a Period Certain Benefit Option that was calculated using segment interest rates, rather than the 30-year treasury rate, as the applicable interest rate, and/or

(2) who were paid a Period Certain Benefit Option that failed to include both the actuarial value of a COLA reasonably estimated to be payable under a life annuity during the lifetime of the participant and the value of the participant's subsidized early retirement benefit (where the participant was otherwise eligible for a COLA and a subsidized early retirement under the Com Dev Plan).

**Group B** includes individuals: who elected a form of benefit that was not a Period Certain Benefit Option but were provided with information describing the various optional forms of benefits and the relative values of each optional benefit form that included a Period Certain Benefit Option that was calculated using segment interest rates, rather than the 30-year treasury rate, as the applicable interest rate, and/or failed to include both the actuarial value of COLA reasonably estimated to be payable under a life annuity during the lifetime of the participant and the value of the participant's subsidized early retirement benefit (where the participant was otherwise eligible for a COLA and a subsidized early retirement under the Com Dev Plan). Group B also includes every derivative claimant of such person who is an Eligible Beneficiary or Eligible Estate Representative as set forth in the Settlement Agreement.

## The Plan of Allocation

Class Counsel created the Plan of Allocation based on the calculations performed by Named Plaintiff's actuary, Jim Holland, of Cheiron, Inc., in Washington D.C. Mr. Holland has over 35 years of experience in the pension area including 25 years as the chief pension actuary for the Internal Revenue Service. *See* Dkt. 86. Pursuant to the Plan of Allocation, Group A members and Group B members will receive Settlement Benefits under the Agreement as follows:

**Group A**: There are 17 Group A Settlement Class members. For each Group A Settlement Class member, Named Plaintiff's actuary calculated the difference between the present value of the Period Certain Benefit Option calculated by the Plan and the total past and present value that Settlement Class member would have received if the Period Certain Benefit Option had been calculated as contended by Named Plaintiff, and utilizing a cost of living factor that had been utilized by the Plan of 2.22 ("Potential Losses"). Group A Settlement Class members (or the alternate payee of such persons) will receive a Settlement Benefit under the Agreement based on a percentage of the Potential Losses less the Fee Award and Case Contribution award determined by the Court.

It is estimated that the gross amount of Settlement Benefits payable to Group A Settlement Class members (before the fee and case contribution award is taken into account) is approximately 85.78 % of the difference between the actuarial present value of the retirement benefits they will or have received under the Plan and the actuarial present value of the retirement benefits that Named Plaintiff contends would have been paid under the Plan utilizing the 30-year Treasury rate and both the actuarial value of the COLA and early retirement subsidies (if applicable). If the Court grants Motion for Attorneys' Fees, Costs and Case Contribution Award, it is estimated that each Group A Settlement Class member will receive a net recovery of over 57% of their Potential Losses were Named Plaintiff to succeed in establishing liability and damages on all claims. If the Motion for Attorneys' Fees, Costs and Case Contribution Award is approved, Group A Settlement Class members will receive an average recovery of approximately $156,349. The highest net recovery for an individual Group A Settlement Class member is approximately $569,123[2]  and the lowest net

---

[2] This amount Settlement Class members will receive is slightly higher than the amount stated in the Motion for Preliminary Approval because the expenses in this case at that time were anticipated to be $85,000 but are actually $83,912.23 and accordingly, $ 1,087.77 more was allocated to Settlement Class members on the Plan of Allocation. See 10/30/17 Martin Decl. ¶ 31.

1   recovery is approximately $732.[3] *See* 10/30/2017 Martin Decl. ¶ 33.

2       **Group B**:  A Settlement Class member is in Group B if he or she elected to

3   receive a form of life annuity benefit.  Group B Settlement Class members have not

4   suffered any potential losses in the manner Named Plaintiff has asserted for Group A

5   members.  Group B members are not receiving benefits calculated in the manner

6   challenged by Named Plaintiff in this litigation. If there has been or is in the future an

7   annual increase in COLA as provided under the Plan, and a Group B member is

8   entitled to a COLA, he will receive it as provided for under the Plan. In addition,

9   where applicable, a Group B Settlement Class member is also receiving both their

10   early retirement subsidy and the applicable COLA in each monthly payment. Named

11   Plaintiff has contended that Group B members received inaccurate information

12   regarding the value of the Period Certain Benefit Options at the time of retirement,

13   and that the values presented were not calculated as Named Plaintiff contends they

14   should have been calculated. Defendants have contended that Group B members

15   received adequate disclosures and did not suffer any monetary losses based on Named

16   Plaintiff's claims. Under the Plan of Allocation, Group B members are being provided

17   with a monetary payment to fully resolve any claims for alleged disclosure violations

18   concerning the disclosures given to them with regard to the relative value of the

19   optional forms of benefits that were available to them at retirement.

20       There are seven Group B Settlement Class members. Although Group B

21   Settlement Class Members elected a life annuity and there is no claim in the lawsuit

22   that the benefits they are currently receiving were miscalculated, the Plan of

23   Allocation provides these Group B members with approximately 10% of each Group

24

25   [3] The difference in payments is based on a number of individualized factors taken into

26   account under the Plans including each Settlement Class member's years of service,

27   final average pay, age at termination of employment and age at benefit

       commencement date.

28

B member's proportionate share of the difference between the values disclosed at retirement for the Period Certain Benefit Options and the values that Named Plaintiff contends should have been disclosed for those options. If the Court grants the Motion for Attorneys' Fees, Costs and Case Contribution Award, it is estimated that Group B Settlement Class members will receive a net recovery of 6.7% of their proportional share based on this difference. If the Motion for Attorneys' Fees, Costs and Case Contribution Award is approved, it is expected that Group B Settlement Class members will receive an average recovery of approximately $11,802. The highest recovery for an individual Group B Settlement Class member is approximately $20,480, and the lowest recovery is $120 (to be paid to the class member's estate because that class member is deceased). *See* 10/30/2017 Martin Decl. ¶ 32.

There will be no reversion of any amount of the Settlement Fund to Defendants. With respect to both Group A and Group B Settlement Class members, if any of the participants are deceased or die before payment is made, there are provisions in the Agreement for payment of Settlement Benefits to the Eligible Beneficiary or Eligible Estate Representative of such person.

The Agreement provides for a release of all claims that were asserted or could have been asserted by Settlement Class members in the lawsuit, except for Individual Mistakes and releases by Defendants of any claims that Settlement Class members are overpaid or will be overpaid as a result of the payment of the Settlement Benefits under the Settlement. Defendants paid for the costs of notice to Settlement Class members and administration of the Settlement payments, including administration of election forms and other documents necessary for payment of Settlement Benefits to Named Plaintiff and/or Settlement Class members.

## IV.   THE SETTLEMENT MEETS RULE 23(E)'S STANDARDS FOR FINAL APPROVAL.

The Agreement eliminates the risk that the Settlement Class members will not recover in the litigation and provides for a Gross Settlement Amount of $4,085,000

for the Settlement Class members, all of whom are retired. As discussed below, final approval of the Settlement is warranted. "[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (citing *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1993)). The Ninth Circuit has stated: "it must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution.   This is especially true in complex class action litigation[.]"  *In re Syncor ERISA Litigation*, 516 F.3d at 1101(quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)). The approval of a class action settlement is committed to the "sound discretion of the district courts to appraise the reasonableness of particular class-action settlement on a case-by-case basis, in light of all the relevant circumstances." *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986); *see also In re Mego Fin. Corp. Secs. Litig. v. Nadler*, 213 F.3d 454, 458 (9th Cir. 2000); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (same, noting decision regarding approval of class action settlement is committed to discretion of the district court judge "because he is exposed to the litigants, and their strategies, positions and proof") (internal quotations omitted).

In reviewing a proposed class settlement, courts do "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *Evans*, 475 U.S. at 726-27; *Staton v. Boeing Co.*, 327 F.3d 938, 963 n.16 (9th Cir. 2003). The court reviewing a settlement should determine whether the proposed settlement taken as a whole is fundamentally fair, adequate, and reasonable. *Hanlon*, 150 F.3d at 1026. This "requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed

7

settlement." *Id*. The identified factors should not be viewed as more significant than other factors, and not all factors will apply to every class action settlement. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993); *Officers for Justice*, 688 F.2d at 625. The Ninth Circuit has further held that because of the danger that class action settlements could compromise the interests of class members due to the individual interests and incentives of class representatives and class counsel, the district court must also consider whether there was fraud, overreaching, or collusion in reaching the settlement. *Staton*, 327 F.3d at 960.

Examined under these criteria, the Settlement Agreement is fair, reasonable, and adequate, and constitutes an excellent result for the Settlement Class members.

**A.    The Settlement Amount Is Substantial and Favors Final Approval.**

The Ninth Circuit has previously noted that "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. [A] proposed settlement is [thus] not to be judged against a hypothetical or speculative measure of what *might* have been achieved[.]" *Officers for Justice*, 688 F.2d at 625. "Estimates of a fair settlement figure are [to be] tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)." *In re Toys R Us-Delaware, Inc. FACTA Litig.* , 295 F.R.D. 438, 453 (C.D. Cal. 2014).

As set forth above, the $4,085,000 offered in the Settlement for 24 Settlement Class Members is substantial and will provide Group A members with a significant percentage of the value of their potential losses based on a 2.22% COLA and 5% interest on past losses. This is more than 85% of Group A members' potential damages before fees, costs, and the service award, and 57% of their maximum potential recovery if the Court approves fees and costs and service award. If approved, this would represent an average recovery of $156,349.

The Settlement also will provide Group B Settlement Class members with a monetary recovery even though Defendants have asserted those Group B members

8

suffered no monetary loss. Because the primary claim on behalf of Group B members concerns certain disclosures, it is uncertain what, if any, relief they may obtain in the absence of the Settlement.  For Group B Settlement Class members whose claims arise from Named Plaintiff's claims that he and others were provided with inaccurate and insufficient disclosures at retirement, the amount payable under the Settlement is also substantial, averaging $17,599 per Group B Settlement Class member before any allocation for fees and costs, and $11,807 per Group B Settlement Class member if the fee application and service award are approved. Measured as the difference between the stated value of the Period Certain Benefit Option in each Group B member's disclosure and what Named Plaintiff claims that disclosure should have stated, the settlement is 10% of the difference before any allocation for fees and costs, and 6.7% after such allocation.

The Settlement amount is substantial and appropriate in light of the uncertainties of continued litigation. *See, e.g., Mego Financial Corp.*, 213 F.3d at 459 (approving a settlement that was 42% of estimated damages and stating that even using the objectors' damages estimates, a settlement of 14% would be fair); *Rosales v. El Rancho Farms*, No. 1:12-CV-01934-AWI, 2015 WL 4460918, at *14 (E.D. Cal. July 21, 2015) (approving a settlement with a class payment that was roughly 25% of the maximum potential recovery); *Rojas v. Zaninovich*, No. 1:09-CV-0705-AWI-JLT, 2015 WL 3657172, at *12 (E.D. Cal. June 11, 2015) (approving a settlement with a class payment that was roughly 50% of the maximum potential recovery); *In re Celera Corp. Sec. Litig.,* No. 5:10-CV-02604-EJD, 2015 WL 1482303, at *6 (N.D. Cal. Mar. 31, 2015) (approving a settlement with a class payment of approximately eight percent of the maximum potential recovery); *see also Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.") (citation omitted).

**B.**   **The Strength of Named Plaintiffs' Case and the Significant Risk, Expense, Complexity, and Likely Duration of Litigation All Favor Final Approval.**

ERISA is a complex, demanding, and evolving area of the law requiring the devotion of significant resources both by the Parties and the Court. This case has been vigorously litigated since the outset in February 2016, and the claims have been in process since 2014, when Named Plaintiff initially filed his administrative claim and appeal with the Plan and thereafter sought documents. At the time of Settlement, there were outstanding dispositive motions pending, pre-trial pleadings were soon to be filed, and a trial date scheduled. The settlement represents a resolution of this entire litigation and provides the Settlement Class with an immediate and substantial monetary recovery with no future risks attached. Given the complexity of the issues, the risks to the Settlement Class, as well as the delay inherent in completing motion practice, potential additional discovery based on Plaintiff's pending Rule 56(d) motion (Dkt. 83), a potential trial, and a possible appeal and remand, the Settlement is fair, reasonable, and in the best interests of the Settlement Class.

Defendants are represented by highly experienced and competent counsel. Defendants have forcefully defended their actions and aggressively litigated this case, and have communicated their intention to continue their vigorous defense through trial and a possible appeal. A ruling in Defendants' favor on summary judgment and/or further rulings regarding class certification and/or the amount of damages could deprive some or all of the Settlement Class members of the opportunity to receive any relief for their claims. The Settlement assures that those Settlement Class members who Plaintiff contends suffered the most losses when they elected the 5-, 10-, and 15-year certain options will recover a significant portion of those claimed losses from this litigation, and further ensures that those Settlement Class members who Plaintiff alleges were harmed as a result of the disclosure violations will recover some monetary relief. The Settlement also significantly minimizes the delay and costs entailed in litigation of these issues, and advances a monetary recovery to Settlement

Class members, all of whom are already retired.

The risks, delay, and expense that will be avoided by the Settlement are significant. If the Settlement is not approved, a substantial amount of additional work will need to be done. Depending on the outcome of the pending motions, the parties will need to complete discovery and resolve outstanding discovery disputes, complete class certification proceedings, file additional dispositive motions, and conduct a potential trial. This would entail additional expert expenses and potentially hundreds, if not thousands, of hours of additional attorney and paralegal time. For example, if the Court were to rule there are triable issues of fact as to the amount of damages, a trial could involve a "battle of the experts" resulting in significant time and a great deal of expense beyond that already incurred.

Additional risks in continuing to litigate include the fact that some Settlement Class members retired many years before the complaint was filed. Kroll Decl. ¶ 2. Others raised concerns to the Plan Administrator but did not pursue their claims after the Plan Administrator indicated that they would not recalculate their benefits.  See Dkt 82 ¶¶ 122-125. These Settlement Class members face the risk of not otherwise being able to recover in light of the statute of limitations and/or other potential defenses. Further, Defendants claim that the Group B Settlement Class members have no possible damages at all and that their disclosure claims cannot be remedied under ERISA. Under the Settlement, both Group A and Group B Settlement Class members will obtain a monetary recovery.

In sum, the Settlement saves the time, cost, and effort of resolving these claims in Court, while providing concrete relief for eligible Settlement Class members. *See Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (unless settlement is clearly inadequate, approval is preferable to lengthy and expensive litigation with uncertain results).

**C.**      **The Risk of Maintaining Class Action Status Favors Final Approval.**

As part of the Settlement, the parties presented a joint motion for class

11

1   certification. At the time of settlement, no class was certified, and Defendants may

2   have opposed a future motion for class certification following discovery. Defendants

3   indicated in prior briefing that they considered class certification open to challenge

4   based on numerosity, among other things.

5          Even if Plaintiff's individual claims were resolved, the rest of the Settlement

6   Class might not be able to bring their own actions. Under the Plan, certain retirees,

7   including Plaintiff, had to sign mandatory arbitration agreements to obtain certain

8   early retirement benefits. These agreements contain class action waivers. Despite case

9   law seemingly endorsing such agreements, even in ERISA cases, Plaintiff challenged

10  the enforceability of the arbitration agreement at the outset.   *See* Count VI of

11  Complaint, Dkt. 1. Defendants determined not to enforce Named Plaintiff's arbitration

12  agreement and therefore stipulated they would not pursue individual arbitration of his

13  claims. Dkt. # 24 at 4. However, this stipulation does not foreclose Defendants from

14  arguing that any future potential plaintiff bringing the same or similar claims must

15  arbitrate such claims individually pursuant to his or her arbitration agreement. Absent

16  this Settlement, it is possible that other individual plaintiffs, if any, might have had to

17  file their own lawsuits and litigate their claims individually. Because there is a risk

18  that the Settlement Class members might not obtain certification and, therefore, might

19  not recover at all if a class is not certified, this factor weighs in favor of final approval

20  of the Settlement. *See, e.g.*, *McKenzie v. Federal Exp. Corp.*, No. CV 10–02420 GAF

21  (PLAx), 2012 WL 2930201,at *4 (C.D. Cal. July 2, 2012) ("[S]ettlement avoids all

22  possible risk [of decertification]. This factor therefore weighs in favor of final

23  approval of the settlement."); *Catala v. Resurgent Capital Sers. L.P.*, No. 08-cv-2401-

24  NLS, 2010 WL 2524158, at *3 (S.D.Cal. June 22, 2010) ("The avoidance of risk of

25  maintaining class action certification throughout trial favors settlement of this

26  action.").

27

28

12

**D.     Class Counsel has Performed Sufficient Discovery, and the Proceedings are Sufficiently Advanced, to Reach an Informed Settlement Decision.**

In the class action context, while "formal discovery is not a necessary ticket to the bargaining table[,]" the proposed Settlement has been reached after more than a year of highly contested litigation with substantial discovery. *Linney*, 151 F.3d at 1239 (internal citation and quotations omitted). During this time, Class Counsel conducted an extensive investigation and discovery, resulting in the production of over 5,000 pages of documents and electronic material, an expert report, an exchange of benefits data and files for settlement purposes, and a declaration and other information from the prior L-3 plan administrator. Class Counsel has also worked with an actuary who played a significant role in determining each individual Settlement Class member's potential damages, developing the Plan of Allocation, and calculating Settlement Benefits. The extent of the completed discovery favors a finding that the Settlement is fair, reasonable, and adequate. *In re Toys R Us-Delaware, Inc.*, 295 F.R.D. at 454 ("The more the discovery completed, the more likely it is that the Parties have a clear view of the strengths and weaknesses of their cases.") (internal citation and quotation omitted).

**E.     The Settlement Was Negotiated by Highly Experienced Class Counsel Who View it as Fair, Reasonable and Adequate.**

As set forth in the Martin Declaration, Ms. Martin and the firm of Martin & Bonnett have extensive ERISA and class action experience. Class Counsel believes the arms-length resolution of this vigorously litigated case represents a fair and equitable resolution for the Settlement Class. 10/30/17 Martin Decl. ¶ 28. The recommendations of Class Counsel "should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979). (citations omitted); *see also Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd,* 661 F.2d 939 (9th Cir. 1981) (finding the fact that experienced counsel approved the settlement after hard-fought negotiations is entitled to considerable weight). Additionally, courts may presume the fairness and adequacy of

a class settlement reached in an arm's-length negotiation among experienced, capable counsel, after meaningful discovery. Manual for Complex Litigation (3d ed.) §§ 30.42 (1995).

Class Counsel have the necessary skill to litigate an ERISA class action case, have extensive experience doing such, and are well-equipped to negotiate a fair settlement for the Settlement Class. Class Counsel's opinion deserves considerable weight both because of its familiarity with the litigation and because of its extensive experience in similar actions. "Given the transient nature of standing ERISA law, this action required highly skilled counsel who could understand the complexity of the law and adapt case law accordingly." *Downey Surgical Clinic, Inc. v. Optuminsight, Inc.*, No. CV09-5457 PSG (JCX), 2016 WL 5938722, at *10 (C.D. Cal. May 16, 2016) (citing cases); *see also In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1392 (D. Ariz. 1989) (citing *Officers for Justice*, 688 F.2d at 625).

Class Counsel has carefully analyzed the issues and evidence, the risks to the Settlement Class in continuing the litigation, the total potential damages, and the benefits and detriments of the Settlement. Based on an exhaustive review of the relevant factors in this case, Class Counsel is satisfied that the Settlement is fair, reasonable, adequate, and in the best interests of Named Plaintiff and the Settlement Class.

## F.   The Settlement Was Reached After Extensive and Adversarial Negotiations, and Is Not a Product of Collusion.

There can be no doubt that the Settlement is the product of legitimate arm's-length negotiations between Class Counsel and counsel for the Defendants, as it is the result of a high-level and hard-fought negotiation reached with an experienced and well respected neutral mediator. This case was vigorously contested from start to finish. It took two full days of mediation and numerous additional conferences with the mediator in order to reach the resolution. During the mediation effort, both Class Counsel and Defendants represented the interests of their respective clients vigorously

and devoted a considerable amount of time, effort, and financial resources to secure the terms of the Settlement before this Court. There was no collusion whatsoever between the Parties in reaching the Settlement.

**G.** **The Reaction of Class Members Favors Final Approval of the Settlement.**

On October 3, 2017, Defendants mailed the Notice to Class Members pursuant to the procedures set forth in the Agreement. *See* Dooley Decl. ¶ 2. While the time for objections has not yet passed, so far not a single Class Member has objected to the Settlement, and the reaction to the proposed Agreement has been favorable. Tom Decl. ¶ 4; Kroll Decl. ¶ 3. *See Relente v. Viator, Inc.*, No. 12-cv-05868, 2015 WL 2089178, *2 (N.D. Cal. May 4, 2015) (granting final approval after considering, *inter alia*, that no class members had objected to settlement); *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 529 (noting absence of objections as "compelling evidence" that settlement is "fair, just, reasonable, and adequate").

The Notice described in plain English the terms of the Settlement, with personalized estimates of individual recoveries, how those amounts were calculated based upon the Plan of Allocation, the considerations leading Class Counsel to conclude the Settlement is fair and adequate, the percentage and exact amount of attorneys' fees Class Counsel is seeking, along with the requested service payment and approximate amount of costs sought, the procedure for objecting to the Settlement, and the date and location of the Fairness Hearing.  Dkt. 147-2, Ex. A. The Notice also contains Class Counsel's contact information. To date, the reaction from those Settlement Class members with whom Class Counsel and Plaintiff have spoken has been favorable, and no Class Member has objected or indicated he or she is displeased by the Settlement. Tom Decl. ¶ 4; Kroll Decl. ¶ 3.

**V.** **CONCLUSION**

For the foregoing reasons, Class Counsel respectfully requests that the Court grant Plaintiff's Motion for Final Approval and enter the proposed order and judgment that was previously submitted as Exhibit F to the Settlement Agreement (and also is

1   attached to Plaintiff's Motion for the convenience of the Court).

2        Respectfully submitted this 30th day of October 2017.

3

4                                    MARTIN & BONNETT, PLLC

5

6                                    By: /s/Susan Martin
                                     Susan Martin
7                                    Jennifer Kroll
                                     1850 N. Central Ave. Suite 2010
8                                    Phoenix, Arizona 85004
9                                    Telephone: (602) 240-6900
                                     *Admitted Pro Hac Vice*
10

11                                   Peter K. Stris
                                     Victor O'Connell
12                                   Thomas E. Logan
13                                   STRIS & MAHER LLP
                                     725 South Figueroa Street, Suite 1830
14                                   Los Angeles, CA 90017

15

16                                   Attorneys for Plaintiff

17

18

19

20

21

22

23

24

25

26

27

28